**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ROY HARRINGTON,<br><br>Plaintiff,<br><br>VERSUS<br><br>LINETEC SERVICES, LLC<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIV. NO. ________<br><br><br><br>JUDGE _____________<br><br><br><br>MAGISTRATE ___________ |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Roy Harrington ("Harrington") files this Verified Complaint for Declaratory Judgment and Injunctive Relief against Linetec Services, LLC ("Linetec" or "the Company"):

### PARTIES

1. Harrington is an individual citizen of Louisiana, and resident of St. Landry Parish, Louisiana.

2. Linetec Services, LLC is a Delaware Limited Liability Company whose members are not citizens of Louisiana.

### JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332, as Harrington is completely diverse from Linetec and the amount in controversy exceeds $75,000.

4. The Court may exercise personal jurisdiction over Linetec because it is registered to do business in Louisiana, does in fact do business in Louisiana, and has its principal business establishment in Louisiana located in Alexandria, Louisiana, which is within the Western District of Louisiana. Further, the causes of action contained in this Complaint arise out of Linetec's contacts within the State of Louisiana.

5. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391, as Linetec is subject to personal jurisdiction in this District and a substantial part of the events giving rise to these claims occurred in this District.

**FACTS**

6. Linetec is an electric infrastructure services company, whose business spans transmission, distribution, telecom, substation, and storm restoration work.

7. Harrington, a veteran in the industry with about thirty-nine years of experience, began employment with Linetec around December 2018. His title was Vice President of Central Region. Harrington was based in St. Landry Parish, Louisiana during the entirety of his Linetec employment.

8. Harrington's Linetec employment continued until his recent resignation from Linetec on October 20, 2026.

9. Beginning in 2024, Linetec's Chief Executive Officer, Brent Hooper, and former owner, Mick Dubea, began initiating plans to form a new company that would compete with Linetec.

10. Hooper and Dubea targeted Harrington as an employee they wanted to join their proposed new business. Harrington was initially invited to meetings and discussions regarding this venture, but ultimately he decided not to move forward with Hooper and Dubea and to remain with Linetec.

11. Hooper and Dubea proceeded with their plans anyway. They began soliciting Linetec clients, projects, and employees – including those under Harrington's supervision – to join their new company.

12. Hooper and Dubea's actions have spawned litigation between Linetec on the one hand, and Hooper, Dubea, and their competitor company on the other.

13. Recently, in September 2026, Harrington opted to blow the whistle regarding Hooper and Dubea's activities by reporting them to the CEO of Centuri Group, Inc.[1] ("Centuri"), Chris Brown. Harrington has also willingly participated in Linetec's investigation into Hooper and Dubea's activities and provided testimony to support Linetec / Centuri's legal filings.

14. Centuri CEO Brown promised Harrington "immunity" from Linetec's legal proceedings because of Harrington's whistleblowing and cooperation. Nevertheless, after he blew the whistle, Linetec suspended Harrington's employment and prohibited him from working for Linetec in any capacity.

15. Despite his longtime service to Linetec and cooperation with their investigation into Dubea and Hooper's activities, Harrington felt compelled to resign. The Company's highest level of leadership had betrayed it and was now competing against it, to both Linetec and Harrington's detriment. After all, many of the Linetec employees, projects, and clients lost by way of Hooper and Dubea were under Harrington's supervision. And, despite his loyalty, Linetec itself was now harming Harrington by forcibly and indefinitely removing him from its workforce.

16. Harrington's suspension continued until Harrington resigned on October 20, 2026.

17. The next day, October 21, 2026, Linetec, through counsel, sent Harrington a letter with the subject line: "Reminder of Contractual Duties Owed to Linetec Services, LLC." This letter, and its attachment, are attached hereto as **Exhibit 1**.

---

[1] Centuri is an indirect owner of Linetec.

18. The purpose of Linetec's letter was to "demand[] full compliance with…contractual obligations" contained in an Employment Agreement attached to Linetec's letter that Linetec claims Harrington executed in December 2020.

19. Should Harrington not comply with such obligations, Linetec's letter states that Linetec "will not hesitate to initiate legal action against" Harrington.

20. Harrington has no recollection of the Employment Agreement attached to Linetec's letter, or of signing it, and the signature is not his. Harrington also recently spoke with Linetec's signatory (Rob Lyon), who told Harrington that he had no recollection of the Employment Agreement or of Harrington signing it.

21. And, during the last two years of his Linetec employment, representatives of Linetec had repeatedly approached Harrington about signing a non-compete, which he refused.

22. The Employment Agreement contains the following non-competition and non-solicitation provisions that violate Louisiana law. Specifically, Section V.B.5 provides:

> 5. <u>Agreement Not to Compete/Solicit</u>
>
> (a) <u>Non-Compete</u>. Employee agrees that during the Covenant Period (as defined below) he shall not, without Employer's written consent, directly or indirectly, for himself or on behalf of or in conjunction with any other person, persons, company, partnership, corporation or business venture of any nature:
>
> (i) engage, as an officer, director, shareholder, owner, partner, joint venturer, employee, independent contractor, consultant, advisor or sales representative, in the Business (as that Business exists at the Date of Termination), within any state or province of the United States, Canada or any other subdivision of any country in which the Company, its direct and indirect subsidiaries or any of their respective successors ("<u>Linetec Group</u>") conducts business or has made material affirmative plans to conduct business (the "<u>Territory</u>");
>
> (ii) solicit, attempt to solicit, or conduct business with any person or entity which is a Customer (as defined below) of the Employer Group within the Territory for the purpose of soliciting, providing, or selling products or services in competition with the Linetec Group; or

(iii) call upon any prospective acquisition candidate within the Territory, on Employee's own behalf or on behalf of any competitor, which candidate was, to Employee's actual knowledge after due inquiry, either called upon by any member of the Employer Group or for which any member of the Employer Group made an acquisition analysis for the purpose of acquiring such entity.

23. The Employment Agreement defines "Business" as including "providing any of the products or services offered by the Linetec Group, as of the Date of Termination." The "Linetec Group" is defined as Linetec Services, LLC and "its direct and indirect subsidiaries or any of their respective successors." Ex. 1, Section V.B.5.

24. The Employment Agreement defines "Customer" as "any person or entity (i) for which the Employer Group provided Business services within the twenty-four (24) months preceding the Date of Termination; (ii) for which the Employer Group actively sought to provide Business services within the twenty-four (24) months preceding the Date of Termination (which includes without limitation responding to a Request For Information or a Request For Quotation); and/or (iii) that has a valid contract for Business services with a member of the Employer Group as of the Date of Termination." Ex. 1, Section V.B.5.

25. The Agreement contains the following tolling provision which could extend the aforementioned restrictions beyond two years in violation of Louisiana law:

> <u>(i)</u> <u>Covenant Period</u>. For purposes of this Section V.B.5, the Covenant Period shall mean the period from and during the Term of this Agreement and ending on the date that is eighteen (18) months after Employee's employment with Employer terminates, whether voluntary or involuntary…Employee acknowledges and agrees that the Covenant Period will be tolled and extended by the duration of any violation by Employee of any of the covenants or obligations contained in this Section V.B.5, so that in any event, Employee shall have refrained from engaging in the activities prohibited by this Section V.B.5 for no less than eighteen (18) months.

Exhibit 1, Section V.B.5.(i).

26. The Employment Agreement also contains the following choice-of-law and choice-of-venue provisions, which are not ratified by Harrington, and therefore are unenforceable under Louisiana law:

> Employer and Employee acknowledge and agree that this Agreement shall be interpreted, governed by and construed in accordance with the laws of the State of Texas, without regard to the conflict of laws principles or rules thereof.
>
> Employer and Employee irrevocably and unconditionally agree that any legal suit, action or proceeding arising out of or relating to this Agreement, as well as to all claims arising out of Employee's employment with Employer or termination therefrom, shall be brought in state or federal court in or having jurisdiction over Houston, Harris County, Texas. Employer and Employee each waive any objection to, and expressly consent to, the personal jurisdiction of the state and federal courts in or having jurisdiction over Houston, Harris County, Texas.
>
> Exhibit 1, Section VII.

27. A present case and controversy exists because Harrington is being told by a prospective employer that, due to Linetec's demand letter, he cannot be hired until a court says that he is free to work notwithstanding Linetec's threats of enforcing the Employment Agreement.

## COUNT I
## DECLARATORY JUDGMENT CONCERNING CONTRACTUAL RIGHTS

28. Harrington incorporates herein by reference the previous allegations.

29. Louisiana law applies to this dispute because Harrington was (and remains) a resident of Louisiana at all times relevant to this proceeding, he (allegedly) executed the Employment Agreement while he was located in Louisiana, he performed services under the Employment Agreement in Louisiana while he was (and remains) a resident of Louisiana, the Company seeks through the Employment Agreement to restrict him from earning a livelihood in Louisiana, he expressly refuses to ratify the choice-of-law and choice-of venue provisions in the Employment Agreement, and this dispute raises serious public policy concerns that are important

to the State of Louisiana. Accordingly, La. R.S. § 23:921(A)(2) dictates that the choice-of-law and choice-of venue provisions in the Employment Agreement are null and void.

30. Harrington contests and disputes the enforceability of the Employment Agreement—specifically the non-competition, non-solicitation, tolling provision, and choice-of-law and choice-of-venue provisions therein—which Linetec has represented in the Employment Agreement and October 21, 2026 letter it will seek to enforce.

31. Harrington asserts that the non-competition and non-solicitation provisions in the Agreement clearly fail to comply with La. R.S. 23:921 and that—as a matter of law—they are unenforceable.

32. For example, La. R.S. 23:921 requires non-competition and non-solicitation provisions in employment agreements to be limited to two years in length—not subject to extension through a tolling provision—and to specify the municipalities and/or parishes in the State of Louisiana (or the counties and municipalities in other states) where competition and solicitation of business is prohibited.

33. At a minimum, the non-competition and non-solicitation provisions in the Agreement are invalid (and not capable of reformation) because they do not list or specify **any** parishes or counties wherein competitive activity is restricted. Instead, the Territory is broadly, generically defined as "any state or province of the United States, Canada, or any other subdivision of any country in which the Company, its direct or indirect subsidiaries or any of their respective successors conducts business or had made material affirmative plans to conduct business." Exhibit 1, Section V.B.5.(a)(i).

34. In addition, the Employment Agreement purports to restrict all competition related to the "Business," which the Employment Agreement defines as providing products or services

offered not only by Linetec, but also by any of Linetec's "direct and indirect subsidiaries or any of their respective successors." The Employment Agreement does not identify any Linetec subsidiary or successor, and Harrington's duties at Linetec did not involve the products, services, or customers of any entity other than Linetec itself. The scope of the restricted "Business" therefore turns on the operations of entities the Agreement never names and that Harrington had no role in, and it would expand automatically with any subsidiary Linetec later formed or acquired.

35. In addition, the non-solicitation of customers provisions defines "Customer" as any entity which the "Employer Group" provided services in the 24 months preceding Harrington's termination. The "Employer Group" includes "Centuri and its predecessors, successors, and ***past, present and future*** parent companies, operating companies, divisions, subsidiaries and/or affiliates." The Employment Agreement does not identify any of Centuri's past, present, or future parent companies, operating companies, divisions, subsidiaries, or affiliates, and Harrington was never provided a list of those entities or of their customers. And, because the definition reaches entities that may not yet exist, neither Harrington nor any other employee could identify, at signing or at termination, the customers with whom he is forbidden to solicit or conduct business.

36. The non-solicitation of customers provision also extends to entities that the Employer Group "actively sought to provide Business services" in the 24 months preceding Harrington's termination.

37. The non-solicitation provisions also extend not just to solicitation, but also to "conduct[ing] business" with the foregoing entities. Thus, effectively, Harrington would be prohibited from soliciting or even working with any entity that Centuri or any of its subsidiaries, "past, present and future parent companies," or "affiliates," provided services to, regardless of

whether Harrington had anything whatsoever to do with the provision of said services on Linetec's behalf.

38. Harrington is being told by a prospective employer that, due to Linetec's demand letter, he cannot be hired until a court says that he is free to work notwithstanding Linetec's threats of enforcing the Employment Agreement.

**COUNT II**
**VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT ("LUTPA")**

39. Harrington incorporates herein by reference the previous allegations.

40. LUTPA prohibits unfair trade practices which involve some element of fraud, misrepresentation, deception, or other unethical conduct.

41. Louisiana courts have expressed a strong public policy against non-competition agreements because they seek to prevent employees from plying their trade and earning a living.

42. In that vein, Louisiana courts have recognized that attempts to enforce invalid non-competition agreements are unlawful under LUTPA. *See Preis v. Standard Coffee Serv. Co*., 545 So.2d 1010, 1013 (La. 1989) (holding that breach of obligation not to enforce an illegal non-solicitation agreement against its employee is actionable under both the general tort law and the Unfair Trade Practices and Consumer Protection Law).

43. Linetec's October 21, 2026 correspondence to Harrington expressly threatens legal action for violation of the restrictive covenants contained in the Employment Agreement.

44. Linetec knew or should have known that the Employment Agreement's restrictive covenants are unenforceable under Louisiana law. Linetec's actions in threatening enforcement of the Employment Agreement have interfered with Harrington's ability to perform work on behalf of a potential new employer and have unfairly restricted the customers he can target and opportunities he can pursue, leading to loss of revenue.

45. Notice of this Complaint will be sent to the Attorney General pursuant to La. R.S. 51:1409(B) immediately upon filing. For continuing violations, Linetec will be liable for treble damages.

46. Harrington also faces the threat of immediate and irreparable harm if Linetec seeks enforcement of the Employment Agreement in a foreign forum, in that he could potentially be prevented from earning a living.

47. Therefore, Harrington is entitled to damages for lost business opportunities under LUTPA.

## COUNT III
## EMERGENCY AND PERMANENT INJUNCTIVE RELIEF

48. Harrington incorporates herein by reference the previous allegations.

49. The Employment Agreement purports to apply the law of another state and requires the litigation of disputes arising from the Employment Agreement in another state's courts in contravention of La. Rev. Stat. 23:921 and in violation of Louisiana's strong public policy interests against burdensome restraints on trade.

50. Linetec has indicated that it intends to enforce the Employment Agreement against Harrington, who at all relevant times was and remains a resident of Louisiana.

51. Application of another state's law may make the Employment Agreement enforceable in whole or in part. The Company's stated intent to litigate disputes arising from the Agreement in an alternate forum amplifies the danger of the Company circumventing the jurisdiction of this Court and the application of Louisiana law as is required by La. Rev. Stat. 23:921.

52. To be clear, Louisiana Rev. Stat. 23:921 prohibits enforcement of a choice of law and forum provision in a dispute arising under an employment agreement involving a Louisiana resident unless the employee ratifies the choice of law or venue contained in the agreement:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. Rev. Stat. § 23:921(A)(2). As such, a choice of law and/or choice of forum provision is unenforceable unless ratified by the employee *after a dispute arises*.

53. Harrington expressly refuses to ratify such provisions in the Employment Agreement, and he faces an imminent threat of irreparable harm arising from the Company's stated intention of seeking to enforce the Employment Agreement, including by applying the law of another state to circumvent Louisiana law and its strong public policy interests.

54. There is a real threat that an alternate forum will not apply La. Rev. Stat. 23:921 to this dispute—creating a procedural and conflict of law question that will also require significant expenses to litigate—notwithstanding Louisiana's strong public policy interests in ensuring its residents have the ability to earn a livelihood through employment in Louisiana. In addition, litigating this dispute in an alternate forum (the Employment Agreement calls for Harris County, Texas) far away from Harrington's home will impose an additional undue burden on him.

## PRAYER FOR RELIEF

55. Based on the foregoing, a present case in controversy exists between Harrington and the Company, and Harrington seeks a judgment declaring the following:

a. Louisiana law applies to the adjudication of any and all issues and disputes presented herein and the enforceability of the Employment Agreement;

b. The Non-Compete, Non-Solicitation, and tolling provisions in the Employment Agreement under Section V.B.5(a) and V.B.5(i) do not comply with La. R.S. 23:921 and are unenforceable;

c. Harrington is not restricted from working, in any capacity, for any competitor of the Company (or the Linetec Group or Employer Group, as those terms are defined in the Employment Agreement);

d. Harrington is not restricted from soliciting, accepting, and/or conducting business with any former, current, or prospective Customer of the Company (or the Linetec Group or Employer Group, as those terms are defined in the Employment Agreement).

56. In addition, Harrington seeks a temporary restraining order, and, after due proceedings, a preliminary injunction and permanent injunction, enjoining the Company and all those acting in concert with it from:

a. Initiating any legal proceedings—whether against Harrington or any entity employing him—seeking to enforce the non-competition and non-solicitation provisions under Section V.B.5(a) of the Employment Agreement, or the choice-of-law provision and/or choice-of-venue provisions found in the Employment Agreement, in any other forum or in any other proceedings outside of this Court; and

b. Demanding, on the basis of those provisions, that Harrington refrain from employment or that any actual or prospective employer refrain from employing Harrington.

57. Harrington also seeks a judgment against the Company for violation of LUTPA, La. R.S. 51:1401, et seq., awarding him actual damages sustained as a result of the Company's unfair trade practices, including lost compensation, lost business opportunities, and lost revenue arising from the Company's attempts to enforce the unenforceable restrictive covenants in the Employment Agreement; treble damages for any violation that the Company continues after being placed on notice by the Attorney General; reasonable attorney's fees and costs; legal interest from

the date of judicial demand until paid; and all other general and equitable relief to which Harrington may be entitled.

58. This Complaint is filed with full reservation of all rights and claims that Harrington has or may have in the future, and with the right to assert additional claims and relief in an amended and/or supplemental Complaint.

**WHEREFORE**, Harrington prays that the relief requested in this Complaint be granted and that a declaratory judgment and injunction be issued and entered by this Honorable Court declaring and ordering the rights of Harrington in accordance with Paragraphs 55 through 56 above.

Respectfully submitted on October 26, 2026.

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne (LA #28119)
Connor H. Fields (LA #39880)
**Jones Walker LLP**
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8015
Email: jlavigne@joneswalker.com
Email: cfields@joneswalker.com

***Counsel for Roy Harrington***

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon Defendant Linetec Services, LLC by placing a copy in United States Mail to its registered agent for service of process and by email to its counsel, this 26th day of October, 2026.

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne (LA #28119)



#112930715v2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROY HARRINGTON, Plaintiff, | : | CIV. NO. ________ |
| VERSUS | : | JUDGE ____________ |
| LINETEC SERVICES, LLC. Defendant. | : | MAGISTRATE _________ |

**VERIFCATION OF ROY HARRINGTON**

I, Roy Harrington, do declare under penalty of perjury that I am of full age of majority and have personal knowledge of the facts set forth herein:

1. I am the Plaintiff in the above-captioned action. I am over the age of eighteen, am competent to make this Verification, and have personal knowledge of the facts stated herein.

2. I have read the foregoing Verified Complaint for Declaratory Judgment and Injunctive Relief and am familiar with its contents.

3. The factual allegations contained in the Complaint are true and correct to the best of my personal knowledge, except as to those matters stated on information and belief, which I believe to be true. To the extent the Complaint contains legal conclusions or characterizations of law, I do not verify those matters and rely on counsel with respect to them.

4. Exhibit 1 to the Complaint is a true and correct copy of the October 21, 2026 letter, and its attachment, that I received from counsel for Linetec Services, LLC.

5. I have not—and do not—ratify the choice of law and/or choice of venue provisions in the Employment Agreement attached to Exhibit 1, and litigating any dispute related to the Employment Agreement in Harris County, Texas, which is far away from my home in St. Landry Parish, Louisiana, will impose a burden on me and my family.

6. The restrictive covenants contained in the Employment Agreement impose an undue burden on my ability to earn a living in Louisiana, and, absent the judgment requested in the Complaint, it will be difficult for me to earn a living with a new employer in my field.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2026, in St. Landry Parish, Louisiana.

Roy Harrington

#112930720v11

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ROY HARRINGTON,<br>Plaintiff,<br>VERSUS<br>LINETEC SERVICES, LLC.<br>Defendant. | : | CIV. NO. ________<br><br>JUDGE ____________<br><br>MAGISTRATE _________ |

## VERIFCATION OF ROY HARRINGTON

I, Roy Harrington, do declare under penalty of perjury that I am of full age of majority and have personal knowledge of the facts set forth herein:

1. I am the Plaintiff in the above-captioned action. I am over the age of eighteen, am competent to make this Verification, and have personal knowledge of the facts stated herein.

2. I have read the foregoing Verified Complaint for Declaratory Judgment and Injunctive Relief and am familiar with its contents.

3. The factual allegations contained in the Complaint are true and correct to the best of my personal knowledge, except as to those matters stated on information and belief, which I believe to be true. To the extent the Complaint contains legal conclusions or characterizations of law, I do not verify those matters and rely on counsel with respect to them.

4. Exhibit 1 to the Complaint is a true and correct copy of the October 21, 2026 letter, and its attachment, that I received from counsel for Linetec Services, LLC.

5. I have not—and do not—ratify the choice of law and/or choice of venue provisions in the Employment Agreement attached to Exhibit 1, and litigating any dispute related to the Employment Agreement in Harris County, Texas, which is far away from my home in St. Landry Parish, Louisiana, will impose a burden on me and my family.

6. The restrictive covenants contained in the Employment Agreement impose an undue burden on my ability to earn a living in Louisiana, and, absent the judgment requested in the Complaint, it will be difficult for me to earn a living with a new employer in my field.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2026, in St. Landry Parish, Louisiana.

Roy Harrington
______________________